UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

v.                                        Cr. Case No. 1:19-cr-00115-JJM-LDA-1

WISDOM ONYOBENO

**DEFENDANT WISDOM ONYOBENO'S SENTENCING MEMORANDUM**

I.    **Introduction**

Defendant Wisdom Onyobeno ("defendant" or "Onyobeno") is before the court for sentencing having pled guilty to two (2) counts of a ten (10) count Second Superseding Indictment [see ECF 133] which included the defendant pleading guilty to conspiracy to commit wire fraud and money laundering (Count 1) and wire fraud (Count 6).[1]

There are a swarm of objections to the Presentence Investigation Report ("PSR") pressed by both the defendant and the government. Without knowing the outcome of those objections, it is difficult for the defendant to firmly jump off of any particular guideline range in preparing this sentencing memorandum. Nonetheless, knowing that the now advisory guidelines still remain a factor in the sentencing phase[2], the defendant will, without prejudice, use as a temporary baseline the PSR's current formulation which calculates a total offense level of 30 and a criminal history

---

[1] The operative charging instrument alleged Onyobeno committed an additional five (5) counts of wire fraud (Counts 2 through 5 and Count 7). In accordance with the parties plea agreement, these extraneous counts will be dismissed at the time of sentencing. See Plea Agreement at ECF 214 at pg. 3, ¶ 2(e).

[2] Due to the now advisory nature of the sentencing guidelines, the guideline range is the "starting point" not the "ending point" of a district court judge's task in fashioning the appropriate sentence. See Molina-Martinez v. United States, 136 S. Ct. 1338, 1345 (2016) Rosales-Mireles v. United States, 138 S. Ct. 1897, 1907-1908 (2018); United States v. Patch, 9 F.4th 43, 48 (1st Cir. 2021).

category of I for purposes of presenting his sentencing recommendation.  This baseline work leaves the defendant with a guideline range of 97 to 121 months.[3]

The defendant will now go on to explicate his reasoning for asking this court to exercise its discretion to impose a variant sentence consisting of a combination of conditions that does not include any additional period of incarceration.[4]

II.    **Sentencing Factors and Other Considerations**

This court needs no education on sentencing mechanics.  The express language of 18 U.S.C. §3553(a) and the progeny of interpretive case law are well-established.  After determining the advisory sentencing guideline range, the court then proceeds ***to consider the other statutory sentencing factors***.  United States v. Jiménez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006) (en banc), cert.denied, 549 U.S. 1118 (2007) (emphasis added).  The totality of these circumstances, once identified, is to be used to determine a sentence "sufficient but not greater than necessary" to

---

[3] Again, Onyobeno maintains that this guideline range is erroneous and greatly overstates the "starting point" this court should ultimately arrive at pursuant to 18 U.S.C. §3553(a)(4)(A).  By way of example only, if the defendant were only partially successful in his objections with this court finding that the final loss amount attributable to Onyobeno was more than $1.5 million but not greater than $3.5 million, the total offense level would be reduced by two (2) levels (add 16 as opposed to 18 under U.S.S.G. §2B1.1(b)) which leaves the court with a starting point of 78-97 months.  In a slightly different twist, if this court were to find that Onyobeno should not have been assigned a four (4) level enhancement as "an organizer or leader of a criminal activity that involved five or more participants", Onyobeno's guideline range could theoretically be reduced to 63-78 months (or possibly even 51-63 months dependent upon his other objections).  No matter how these PSR skirmishes are resolved, Onyobeno maintains that all of it is academic given the length of time Onyobeno has been serving since his initial arrest in Georgia and his continuous detention since November 19, 2019 on these very charges. With the defendant closing in on five (5) years of actual detention (without factoring in good time credit, no ability to participate in meaningful rehabilitation programs or earn additional credits under the First Step Act), a sentence of time served should be part of the discussion at the upcoming sentencing hearing.

[4] See Gall v. United States, 552 U.S. 38, 59 (2007); Pepper v. United States, 526 U.S. 476, 489-90 (2011).  See also United States v. Soto-Rivera, 811 F.3d 53, 59 n. 9 (1st Cir. 2016).  Again, defendant refers to the imposition of a "variant" sentence based on the current PSR guideline calculation.  It may turn out that a sentence of "time served" will not constitute a variant sentence.

2

achieve the aims and goals of the sentencing phase of the criminal proceeding.[5]

With this sentencing framework in mind, Onyobeno addresses the following statutory sentencing factors as part of his final plea to the court to impose a sentence of time served with a combination of conditions which no longer subject the defendant to further incarceration.

### A. The nature and circumstances of the offense and the history and characteristics of the defendant.[6]

There is no dispute by the defendant that the crimes for which he stands convicted of is a serious crime which has caused financial harm to others.[7]  He regrets his participation in the scheme.  Onyobeno will not recount here the plea colloquy which he has placed before the court with respect to the confines of his admissions to his conspiratorial conduct.[8] Onyobeno has admitted that he conspired with co-defendant Syretta Scherer ("Scherer") which the formed the basis for his plea to Count 1.  Onyobeno acknowledges that he opened and allowed accounts to be opened by others in order to funnel and move illicit monies through those accounts.  He further acknowledges that those proceeds were used to purchase vehicles that were shipped overseas to Nigeria.  Defendant acknowledges that his legal business dealings—buying and shipping vehicles

---

[5]  Under the "parsimony clause" of 18 U.S.C. §3553(a), this court must impose a sentence that is "sufficient but not greater than necessary" to comply with the purposes set forth in 18 U.S.C. §3553(a)(2), which reflect "the need for the sentence to be imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. §3553(a)(2).

[6] See 18 U.S.C. §3553(a)(1).

[7] This statement is not an acknowledgement that the PSR correctly assessed a four (4) level adjustment to the base offense level for "substantial financial hardship to five or more victims" pursuant to U.S.S.G. § 2B1.1(b)(2)(B). See PSR at pg. 22, ¶104. Yet another adjustment which significantly altered the guideline range presented by the PSR. If the defendant prevailed on this objection alone, his guideline range would shift downward to 63-78 months.  If he prevailed on this objection and the loss objection as referenced above in footnote 3, his guideline range would drop down to 51-63 months.

[8] This was addressed at length in his objections to the PSR.

to Nigeria—were ultimately used by him for an unlawful purpose to allow others to carry out the scheme.

The defendant's role in the offense was much more limited than described (or believed) by the government.  Yes, the defendant played his role in the overall scheme whose object was to dupe third parties and deprive them of their money, but he was not the duper but the one who assisted the dupers by facilitating the movement of money.  This defendant was not the leader or organizer as urged by the government but instead was one who took direction by others; the latter of whom substantially profited by the criminal activity (not Onyobeno).[9]

### 1.  Who is the defendant?

This question is an important one.  It will provide the court with guidance as to the rehabilitative aspects of this defendant and the need for additional incarcerative punishment.

Onyobeno is forty-four (44) years old.[10]  He was born in Nigeria.[11]  After entering the country, Onyobeno was married in September 2017.[12]  He is highly educated with a Bachelor of Science degree in human anatomy.[13]  He had enrolled in an online program to obtain a master's degree in public health but was arrested for the instant offense and unable to move forward with

---

[9] Pointedly, for the millions of dollars of stolen money that the government attributes to Onyobeno (which this defendant denies partaking), this defendant has nothing to show in terms of assets to forfeit.  Such is the case because defendant's criminal activity was narrower than believed by the government.  This misbelief is understandable due to the different unconnected romance scams which were launched by others including Dominique Golden ("Golden") who was not only charged in the District of Rhode Island (see United States of America v. Dominique Golden, Cr. Case No. 19-cr-00115-JJM-LDA) but also in the Northern District of Georgia. (See United States of America v. Dominque Raquel Golden et al., Cr. No. 1:20-cr-114).  Her overlapping criminal activity in the different schemes and likely churning of the same victims has confused Onyobeno's criminal activities.

[10] See PSR at pg. 2.

[11] See PSR at pg. 25, ¶ 127.

[12] See PSR at pg. 25, ¶ 127.  Onyobeno had previously entered this country in 2015.

[13] See PSR at pg. 26, ¶ 135.

this program.[14] The defendant reported a history of self-employment.[15] Other than the instant offense, he has no other reported criminal activity.[16]

The defendant provided the interviewing probation officer with his family history including the name of his parents[17], his siblings[18], his children[19] and his current wife[20]. Onyobeno's wife hopes to repair their marriage upon his return home from incarceration.[21]

Putting aside defendant's immigration issues which will be addressed in a different forum, Onyobeno clearly has a family and a home in the United States to turn to upon his release. He is a highly educated and motivated person who can easily re-enter society as a positive and contributing member of society.[22]

### B.     The Need for the Sentence Imposed.

As noted above, another § 3553(a) factor to be measured by the court in the sentencing mix is the "need for the sentence imposed" which, *inter alia*, takes into consideration: "the seriousness of the offense, specific and general deterrence, protect the public from the defendant from further

---

[14] Enrolling in a post-college educational program to obtain a master's degree in public health evidences a person who is seeking to improve his station in life and not one who intends to embrace criminal activity for the long run.

[15] See PSR at pgs. 26-27, ¶¶ 137-138.

[16] See PSR at pg. 23, ¶¶ 115 and 117.

[17] See PSR at pg. 24, ¶ 120.

[18] Id.

[19] Id. at ¶ 123.

[20] Id. at ¶¶ 124-126.

[21] Id. at pgs. 24-25, ¶ 126.

[22] As the defendant will tell the court, he has used the last five (5) years in custody to reflect upon his past actions and his life going forward. Onyobeno advised the probational officer that "he finds the most comfort and reassurance in his relationship with God and the bible." See PSR at pg. 26, ¶ 133.

crimes and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. See supra at footnote 5.

Again, the charged offense for which this defendant stands convicted is indeed serious. A significant jail term is appropriate not only to punish this defendant (specific deterrence) but to send a strong message to others (general deterrence) not to engage in this type of criminal activity. As will be explained below, this defendant stands remorseful. He is no longer a danger to the public. There is no needed educational or vocational training or treatment this defendant requires before reentering society.

### C.    Other Romance Scam and Fraud Sentences.

18 U.S.C. § 3553 (a)(5) instructs the court "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct". While there is no perfect co-defendant match to juxtapose to Onyobeno, the court should use as a guidepost not only the defendants charged in the District of Rhode Island but also other romance scam prosecutions in other jurisdictions. A brief review of those other sentences will follow.

### 1.    Syretta Scherer

This co-defendant, who Onyobeno acknowledges he conspired with, was sentenced by this court to a term of forty-six (46) months incarceration.[23] Scherer worked closely with Onyobeno by opening bank accounts which allowed illicit monies to be deposited into and withdrawn from those accounts. Like Onyobeno, Scherer was not the profiteer of this criminal scheme.

As it currently stands, Onyobeno has almost fifty-nine (59) months of actual time served in detention. Applying a fifteen percent (15%) good time credit, the defendant's total credited

---

[23] ECF 260 Final Judgment in a Criminal Case [for Scherer]. Onyobeno will not second guess and attempt to go behind the appropriateness of Scherer's sentence. That imposed sentence is final and therefore Onyobeno will use that sentence as a barometer for any sentence to be imposed upon him.

time of service is almost 67.5 months.[24] This number will continue to increase with each day of continued detention.

Comparing Onyobeno to Scherer, this defendant has 21.5 months (and counting) of additional jail time over and above the sentence imposed upon Scherer. It is anticipated that the government will argue that Onyobeno is more culpable than Scherer. That said, there is no compelling reason for this court to impose a sentence upon Onyobeno which results in an even greater disparity between Onyobeno and Scherer than currently exists. Imposing a sentence of more than time served upon Onyobeno will do exactly that. The 46-month sentence imposed upon Scherer should cap Onyobeno's sentence to exactly where he sits now. For this reason alone, this court should impose a sentence of "time-served" together with the applicable term of supervised release.

### 2.    **Dominique Golden**[25]

Golden was sentenced to seventy-eight (78) months incarceration in the District of Rhode Island. She was contemporaneously prosecuted in the Northern District of Georgia as referenced in footnote 9 above.

According to Golden's defense counsel's sentencing memorandum filed in this court [ECF 168], Golden admitted that the loss amount associated with her criminal activity in that foreign

---

[24] As of the date of this sentencing memorandum, Onyobeno has approximately 58.63 months of actual service in detention. Multiplying this time by fifteen percent gives him 8.795 months of credit which, when added back to 58.63 months, gives the defendant total combined months of service and credits of 67.42833 months.

[25] Golden's role in the criminal activity was much broader in scope than Scherer. She also reaped significant financial benefits from the criminal activity as evidenced by the specific property Golden was required to forfeit including: (i) a 2018 Bentley registered in her name; (ii) a 2017 Mercedes E-Class registered in her name; and (iii) cash, Rolex watches, and gold rope chains. She was also required to forfeit certain firearms which leads to other questions regarding her elevated role in multiple romance and fraud schemes prosecuted in this district and another district.

prosecution was **$7,925,727.60**.  The government's sentencing memorandum in this district shows losses stemming in this district's prosecution of $2,545,041.  Therefore, Golden was found to be responsible for total combined losses of $10,470,768.60 in the two (2) separate prosecutions.[26]  Even more interesting is that Golden apparently reaped the benefits of her financial crimes stealing from others as "Golden was the recipient of $1,263,822, nearly half of the total amount of proceeds received during the period of her involvement."  See ECF 171 (government's sentencing memorandum).[27]

It is anticipated that an argument will be made that Onyobeno's conduct is more on par with the criminal conduct of Golden as opposed to Scherer.[28]  Onyobeno suggests that Golden is far more culpable than him.  This is evidenced by her dual prosecution in multiple districts.  It is corroborated by the mammoth losses she has been found liable for in the two (2) prosecutions.[29]

While Golden was sentenced to serve 78 months in this district, she had already pled guilty and been sentenced to a fifty-four (54) month sentence in the Northern District of Georgia.  The

---

[26] The government urges that Onyobeno is responsible for approximately $5.8 million of losses which he has challenged.  Even assuming *arguendo* that the government's loss amount is adopted by the court, Golden's combined romance scam losses of $10.47 million of losses is absolutely staggering.  Golden's losses exceed Onyobeno's alleged losses by nearly $4.7 million.  This is particularly relevant in weighing the appropriate sentence to be meted out to Onyobeno.

[27] Golden received $1.263+ million of the $2.545+ million she was found responsible for in this district.  It is unknown how much of the $7.925 million she may have received as part of the Northern District of Georgia prosecution.

[28] In fact, it is anticipated that the government will take a harder stance suggesting that Onyobeno is more culpable than Golden.

[29] The government curiously wishes to pin Golden's conduct to Onyobeno yet she appears to be a one person wrecking crew causing in excess of $10 million of losses in these two (2) known romance/fraud scam prosecutions and personally reaping financial benefits as evidenced by her forfeited assets and the lifestyle she led.  Onyobeno, on the other hand, shows virtually nothing in terms of assets dating back to his arrest.  Finally, Onyobeno was prosecuted in this district alone which shows that Golden was running in her own circles, not with Onyobeno.

78-month sentence was imposed concurrently with the 54-month sentence.[30] In all, Golden was sentenced to 6.5 years for her very active, high-level role in a $10.4+ million romance scam which far exceeded the conduct of Scherer and Onyobeno.[31]

### 3.    Sadae Mills ("Mills")

This defendant had a limited role in Golden's scheme.[32]  She was sentenced to a one-year probationary term and ordered to pay $34,710.00.   While this sentence does not control Onyobeno's sentence, it sets the low end of any sentence imposed upon the criminal participants charged in this district.

### 4.    Breauna Williams ("Williams")

This is another defendant who criminally danced with Golden, not Onyobeno.  She was previously sentenced by this court to a term of probation of two (2) years and ordered to pay $128,265.83 in restitution.  Like Mills, Williams had a more limited role opening bank accounts on a much smaller scale.  Williams too is a defendant that falls on the lower end of the criminal ladder.

### 5.    Other defendant(s) charged in the Northern District of Georgia

As noted above, Golden was but one of many other defendants charged in various fraud

---

[30] In other words, this court imposed another twenty-four (24) months on top of the fifty-four (54) month previously imposed sentence.

[31] Golden was released on bond in this district following her arrest in Texas.  She remained free on bond until she was formally charged in the Northern District of Georgia and held without bail.  Onyobeno was not so fortunate and has found himself serving nearly five (5) years in a detention facility.  Although he was released by a U.S. Magistrate in a foreign district where he was arrested on the instant charges, a U.S. Magistrate in this district reversed that release order.  Onyobeno has steadfastly argued throughout these proceedings that the U.S. Magistrate sitting in this district had no legal authority or jurisdiction to reverse the setting of bail in the foreign district.  Onyobeno has preserved the right to appeal this very issue as evidenced by paragraph 10 of the parties' Plea Agreement.  See ECF 214 at pg. 6, ¶ 10.

[32] Onyobeno has denied conspiring with Sadae Mills ("Mills").

Schemes prosecuted in the Northern District of Georgia including but not limited to romance scams. A review of the sentences imposed in that out-of-district case show a wide range of different sentences ranging from probation on the low end to eight (8) years, one (1) month on the higher end. [33]

Interestingly, the defendant who received the 97-month sentence was Golden's husband, Joshua Roberts ("Roberts"). In addition to this term of incarceration, Roberts was ordered to serve three (3) years of supervised release and pay $9,675,739.73 in restitution. This restitution amount is almost $4 million more than the amount the government seeks to assess against Onyobeno.

### D.   The Parsimony Clause–"Sufficient But Not Greater Than Necessary"

Onyobeno acknowledges the seriousness of his criminal conduct and his role in the non-violent, economic offense. Onyobeno's life has been one that has greatly swung between professional success in education and business and the low point of now standing convicted of serious federal crimes and residing in a federal detention center with an assigned inmate number. He has lost nearly five (5) years of his life. With good time credit, he has logged approximately 67.5 months of total detention. However, the true length of Onyobeno's detention does not end here. Since his time has been served in pretrial detention, Onyobeno has lost the opportunity to earn additional time credits authorized by 18 U.S.C. § 3632(d)(4) and Section 101 of the First Step Act of 2018 (the "FSA"). [34]

Onyobeno's detention has also not been an easy one. He was incarcerated at the Donald W. Wyatt Detention Facility during the COVID-19 pandemic. As this court is well aware, this

---

[33] See Press Release issued by U.S. Attorney's Office, Northern District of Georgia on June 2, 2023 https://www.justice.gov/usao-ndga/pr/dozens-sentenced-their-roles-atlanta-based-fraud-and-money-laundering-operation-stole (providing a list of defendants and sentences imposed in that prosecution).

[34] Inmates eligible for the FSA can earn up to 365 days off their sentence in earned timed credits.

10

facility was hit hard during the pandemic. The facility suffered significant spikes in 2020 and 2021 with this court issuing an Amended General Order on April 9, 2021 directing the warden of the facility to file weekly status reports with the court "concerning the incidence of COVID-19 at Wyatt and the progress of COVID-19 vaccinations for staff and inmates". See Amended General Order at pg. 1. The court should take into consideration Onyobeno's incarceration at Wyatt during the pandemic as a mitigating factor before imposing a final sentence.

The defendant is forty-four (44) years old. He is not in need of educational, vocational or correctional treatment.[35] A lengthier term of imprisonment will not serve any of those statutory considerations.[36]

Finally, there are the issues of specific and general deterrence which are part of the sentencing recipe; the proper weight to be afforded to each ingredient widely debated over the years. Onyobeno is not a defendant who needs to be further corralled to engage in good behavior going forward. He has been compliant during his detention at Wyatt. He has turned the pages on this ugly chapter in his life and is ready to begin a brand-new chapter by reentering society and serving as a productive member. Unlike many defendants who may find themselves in Onyobeno's situation, Onyobeno is highly educated, intelligent and capable of rebounding from this serious crime.

Imposing a sentence of time served effectively punishes this defendant (who effectively has approximately 6 years under his belt) and sends the appropriate message to the general public to deter others from committing similar crimes.

---

[35] 18 U.S.S.C. § 3553(a)(2)(D).

[36] With the amount of time defendant has served (or been credited) to date, Onyobeno would not benefit from any long-term prison programs. Even if this court rejected Onyobeno's sentencing recommendation, this defendant should have a very short stint served while in the custody of the Bureau of Prisons ("BOP").

## III.    Conclusion

The defendant has pled guilty to the charged conduct and accepted responsibility for his role in the offense.  This defendant did not reap substantial financial benefits from his criminal activity like others such as Golden, her husband (Roberts), and scores of others prosecuted in the Northern District of Georgia. Onyobeno was wrong to utilize his knowledge and experience in the car business to help others launder illicit proceeds.  He was wrong to involve Scherer.

Nonetheless, Onyobeno has served a lengthy amount of time in pre-trial detention during an unprecedented worldwide pandemic.  Like other prisoners at Wyatt, he was exposed to the COVID-19 virus and, even worse, forced to reside in a detention facility which was not equipped to house inmates in a pandemic.[37]

There is no compelling reason to require Onyobeno to serve any additional time.  Given the length and nature of his detention which began and lasted throughout the pandemic, Onyobeno's almost six (6) years of incarceration is effectively much more than 6 years.  To boot, he should not receive a sentence that is equivalent to the sentence imposed upon either Golden or Roberts.[38]

---

[37] There were no easy answers for this or any other facility but to distance inmates leading to segregation which only made detention much more difficult.

[38] Applying the universal 15% good time credits and the potential FSA credits to the sentences imposed upon Golden and Roberts shows how much time Onyobeno has already served.  With respect to Golden who received a 78-month sentence in this case which was concurrent to the 54-month sentence she received in the Northern District of Georgia prosecution; a 15% reduction leaves her with 66.3 months.  (Onyobeno has almost 67.5 months of actual and good time served as of now.)  This does not account for an early 6-month release by Golden to a halfway house or home confinement.  Now, this is the same defendant—Golden—who was responsible for combined losses of $10,470,768.60 between the two (2) prosecutions. She would be eligible to earn potential FSA credits unlike Onyobeno.

With respect to Roberts, a 97-month sentence turns into an 82.45-month sentence after deducting 15% for good time credit.  Again, unlike Onyobeno, Roberts presumably might be eligible for additional FSA credits up to an additional one (1) year and further eligible for a 6-month early release to a halfway house. This could theoretically bring Roberts down to 66.45 months which is less than Onyobeno's current service numbers.  Yet Roberts was found to be responsible for $9.675 million in losses. This sounds inequitable.

In light of the foregoing, defendant asks this court to exercise its discretion and to impose a sentence of a time served followed by the appropriate term of supervised release.[39]

Respectfully submitted,
Defendant,
Wisdom Onyobeno,
By and through his attorney,


*Michael J. Lepizzera, Jr.* _____
Michael J. Lepizzera, Jr. (#4995)
Lepizzera & Laprocina Counsellors at Law, Ltd.
117 Metro Center Blvd., Suite 2001
Warwick, RI 02886
Tel: (401) 739-7397
Fax: (401) 384-6960
Email: MLepizzera@LepLap.com


CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


*Michael J. Lepizzera, Jr.* ____
Michael J. Lepizzera, Jr.

---

[39] This sentencing memorandum was premised upon the PSR's guideline calculation of 97-121 months. Given Onyobeno's unsettled objections to the PSR, it is possible that defendant may have served (both in actual service and credits) enough time to fall within the applicable guideline range found by the court. Thus, any request for a sentence of time served would not constitute a request for a variant sentence.